The next case for argument is Kanyike v. U.S. Bruce Zucker Good morning, your honors. May it please the court, Bruce Zucker, the law firm of Travis Graham and Zucker LLP, on behalf of the defendant in the Pellman, Hassan Kanyike. There are two issues, as you know, your honors, in this case, and we thoroughly briefed them, but I only, we made our best arguments there. I do want to highlight a point in having to do with the enhancement for the financial institution over a million gross receipts issue, and I want to highlight that, as the court knows, this is a plea agreement. The district court did not follow the plea agreement, so the part of the plea agreement the government had to stand down on arguing the enhancements for the two issues here. So the court was entirely relying on the probation officer to flesh out the facts to support the financial institution enhancement, and the probation officer in the present report wrote approximately $1,200,500, and because it was so close to the threshold, the word approximately, I think, is the problem here, because does that mean it was just under or just over? We don't know. This is coming to us in the context of an ineffective assistance claim, correct? Correct. So don't argue it just in terms of error, but in terms of ineffective assistance? Well, let me start with that, because in the position paper from sentencing counsel, really in the objections to the present report after the present report was disclosed, and at sentencing, he didn't address that at all. All he did was generally object to the fact that the probation officer recommended or put in that enhancement as part of the calculation. And again, we're not really sure. I know what you were saying in the prior case about was there a recommendation to include this in the sentence, and I know in the central district, having been a probation officer in the central district, sometimes those recommendations are disclosed to counsel, sometimes they're not, and I didn't see that in the record here. So we don't know what the recommendation was, whether to follow that, but the fact of the matter is it's part of the calculation that the probation officer put forward to the court, and the court followed that. And the sentence was based on approximately $1,200,500, and counsel did not in any way ask for the probation officer to come to court to clarify that or to otherwise challenge it or to make an argument that it's within a margin of error. That's ineffective assistance of counsel. That's plain from the record. It doesn't require $2,255,000. And we're not asking the court to correct it here, but just to remand and allow the probation officer to do her independent investigation. Wasn't this amount addressed in the plea agreement? Approximately. It says approximately, yes. And your client agreed to that? To approximately. Well, the plea agreement doesn't address financial institution receipts. It addresses the amount, you know, of the loan. But, again, it's the, and I think this is what the government argued in its opposition here, and in our reply we pointed out that the plea agreement also used the word approximately. And, you know, if this was $1.2 million, $1.3 million, we wouldn't be here. But counsel below focused on whether or not these institutions were technically financial institutions within the meaning of the guidelines, and that was a waste of time because they were. And the question is, why didn't the probation officer do her Rule 32 duty, her directed duty, what you're trained to do, and verify? Verify that these amounts are accurate. That's the whole, that's what probation does. They're amazing people. I mean, I'm not trying to fault her. If I understand it, if you add up the loans, it does end up being approximately $1 million. Well, but that's where I, that's where the probation officer should have, what they do with verifying for restitution, or are supposed to do, contact the victims, and make sure those amounts are accurate. Same thing with the criminal histories. They don't just take the rap sheets. They don't just take what the government says the criminal history is. They go to the courts and verify that those convictions are not only accurate, but that there was counsel and that they were voluntary and only uniformly done. What if there's a plea agreement that says it's going to be approximately $1 million? Then the PSR actually comes up with a way that you get to $1 million. I mean, what else could the probation officer do? Independent, well, the probation officer is not supposed to rely on the plea agreement. The probation officer is supposed to do an independent investigation here, irrespective of the plea agreement, which is exactly, and that's the whole point. The plea agreement doesn't call for this enhancement. The judge and the probation officer did that independently, and that's where the probation officer, the duty fell upon her to make that accurate. And, again, it's so close to that million. If it had been just under, we wouldn't have the two-level enhancement. And the plea agreement does not at all address that. On this issue, it's difficult to address it by way of direct appeal rather than a 2255. That's not what you're asking for, right? Given the stipulated facts in the plea agreement, why wasn't it a reasonable strategic choice for counsel to really focus on the argument that the bank really didn't suffer any loss because it was just a conduit for distributing government money? The PSR says approximately a million plus. That's the exact language of the stipulated facts in the plea agreement. So, to me, on this particular record, it seems focusing on the argument that the bank didn't suffer any loss was a stronger argument. But I think there was a stipulation. That could be a valid strategic choice by counsel. Well, I think there was a stipulation that under the loss calculation or 2B1.1 that the amount, the intended loss was 1.7, I think, something like that. And the actual was 1.3. And for restitution purposes, et cetera. So that was what the plea agreement contemplated, was calculating the loss for those purposes. The plea agreement did not contemplate, and the factual basis of the plea agreement didn't contemplate, that there would be either a stipulated means or financial institution enhancement here. So, it caught everyone by surprise, I guess, below, or the defense and the government, for that matter. And, again, the ineffectiveness of challenging that amount that just barely exceeds the threshold and the word approximately. And I think that the remedy is. But why was he ineffective? Because he was surprised like everybody else. Well, no, he wasn't. Well, no, I mean, he wrote his objection and didn't address it. Why wasn't he addressing it at that point? Because the pre-sentence report calculated it. But it was not a dispute. It was stipulated to in the plea agreement, virtually. But not the financial institution enhancement. No, but which is based upon the amount. So, I mean, you know, why should he, you know, spend a lot of time there for contesting that? I mean, why is it, you know, maybe you can debate that, but why is that ineffective assistance? Because basically the PSR calculated that and added that to the total offense level, which brought it an extra two levels up. I mean, that's what I would have done. I would have strenuously attacked that. And because I know that the court, although can follow the plea agreement, everybody knows that it doesn't have to. And I would just expect it wouldn't necessarily do it. And particularly in a case like this where. But what is the basis for attacking it? Because it says approximately. Yes. Approximately $1,200,500 instead of. This is not a situation. And I'd like to save whatever time I have left for rebuttals. I'm going to finish your answer and then. Okay. I'll have a little bit of time for your rebuttals. Let me just say this. When we're talking about approximately a house worth valued at approximately $1 million, that's a lot different. These were applications for loans that had an exact dollar amount. It shouldn't say. It was exactly whatever it was. Thank you, Your Honor. Good morning. May it please the Court. Richard Robinson, Assistant to the United States Attorney. On behalf of Plaintiff Appelli of the United States of America. As the Court knows, there are two separate ineffective assistance of counsel claims that are brought on this appeal. Counsel really only addressed the second one. So I will focus on that. But if the Court has any questions about the first ineffective assistance of counsel issue, which relates to the sophisticated means enhancement, I'd be happy to address that as well. Turning to the enhancement for gross receipts in excess of $1 million, counsel says, well, the attorney representing the defendant below at sentencing should have argued that the total did not exceed $1 million and that the probation office used the word approximately when referring to that number. That's wrong. That's wrong for the reasons we stated in our brief. If you carefully go through and look at the record where the word approximately is used, it is not used when there's a reference to there being a $1 million to $2,550. May I ask you, counsel, to follow up on something Judge Wynn was asking about? It seems to me that we're speculating regarding why defense counsel did or did not do something. Whereas in the 2255 context, we might have counsel's affidavit or declaration saying, this is why I did or did not consider making this argument, and then the Court could determine if that's objectively unreasonable or not under Wood v. Crickland. What's your position? My position is this is the appeal that the defendant chose to make. The defendant chose to include in his direct appeal these arguments without further developing the record, taking the position that the record was sufficient to support his claim, and the government could have opposed it based on the appeal waiver language in the plea agreement. But since we agreed that, yes, the record is sufficient to resolve these ineffective assistance of counsel claims, we've agreed to go ahead and address it rather than, frankly, waste resources recycling it for a 2255. But I would also say, Your Honor, that there is nothing in the record that suggests that the math that totals to more than $1 million for these loans is in any sense wrong. Part of the Strickland test, of course, is to show prejudice, and there's nothing that has been cited in the record to indicate that the amount of money that was derived by the defendant from the financial institution of loans here was $1 million or less. Everything in the record is that when you total up those loans, it exceeds $1 million. The other point I would make, Your Honor, is in counsel at sentencing weighing what arguments to make, there's another consideration. If he would have argued that the amount was $1 million or less, it would have been a breach of the plea agreement, in our view. And that itself could be argued to result in exposing the defendant to some pretty serious consequences. So then it's just like the ineffective assistance didn't occur at sentencing. It occurred at the time the plea agreement was negotiated and entered into. Well, that's not what Three has done at PIA. Well, I know there's plenty that's not. But that's kind of a softball question. I don't think it was there either because the amount was not in dispute. There was no dispute that what the amounts of the loans are. This was not a complicated accounting issue. It was just total up the amount of the loans that were paid by these financial institutions. And again, if counsel below would have argued that contrary to the plea agreement it was actually less, the government would have been freed from its obligations under the plea agreement, for example, to argue for a low-end guideline sentence for him. The government would have been freed from the provision in the plea agreement that it would not further prosecute the defendant for other offenses such as aggravated identity theft, which if he was prosecuted for that, that's a two-year consecutive sentence that would be tacked on to any sentence he sustained in this case. So there were good reasons, I submit, why counsel below wouldn't want to contradict the plea agreement and renege on it and expose the defendant to these additional jeopardy that could be pursued by the government because of the violation of the plea agreement. And I explored your argument on violation of the plea agreement a bit because the plea agreement did use the word approximately. Is there specific language in the plea agreement that precludes counsel from challenging the enhancement based on loss? Because the plea agreement didn't pin down specific numbers. It's just the defendant caused Bank C to transmit approximately 420. Sure, if you take those numbers at face value, add it up, it does get you over the billion dollars. But I didn't see a specific provision prohibiting counsel from challenging the enhancement based on the amount of loss. Your Honor, I believe the plea agreement has a provision with respect to the guidelines that the parties agreed not to pursue any other adjustments or enhancements. That's not that provision. It's not that provision of the plea agreement. And the plea agreement incorporates a set of stipulated facts as part of the plea agreement, and it's in those stipulated facts that counsel below is laid out. If my question wasn't clear, that's what I'm talking about. The stipulated facts did use the same language as the plea agreement, approximately X amount of dollars. And so I wanted to make sure I understood your idea as to why it would be a violation to challenge the calculation of the numbers. Because the stipulated facts of the plea agreement, which the defendant has agreed to as part of his plea, I submit if you read them carefully, and this was laid out in our brief, when it's discussing the amount that came from the lenders that are financial institutions under that enhancement, and you total it up, it does exceed a million dollars. And there's no suggestion that it can be any less than that. And so for defense counsel sentencing to argue it was less than those amounts that were stipulated to in the plea agreement, Harvey would have violated the plea agreement. In other words, he's not ineffective for avoiding violating the plea agreement by making an argument that's inconsistent with it. And for habeas purposes, it wouldn't matter whether it would violate the plea agreement if counsel objectively rendered effective assistance by saying, I did not want to risk that either, correct? Correct. And then the second point I would make is simply under Strickland prejudice has to be shown. And here there's no showing of prejudice in that there's nothing in the record that would suggest that if counsel would have argued it, he could have come up with a lower number than the 1 million. Nothing. That's part of the reason why the government was willing to not enforce the appeal waiver here and allow this to proceed in what would otherwise be a habeas type claim for ineffective assistance to counsel because the record is fully developed. There's not going to be anything further that needs to be done to the extent that counsel on appeal is suggesting, well, we should remand. I submit they should have brought the appeal style this way. They should have brought it 2255. On the prejudice issue, I'm still stuck on whether this needs to be at 2255 because setting aside whether counsel made a reasonable strategic choice, assuming that there was some ineffectiveness there by not challenging the loss calculation, how do we weigh the fact that this is really the government's burden to demonstrate loss into the prejudice analysis? I mean, they don't have to come up with numbers. It's the burden is on you to come up with the numbers. The numbers are in the PSR, the Probations Report here. The numbers that total the more than a million are in that, which the court relied on. So we're saying those numbers not only come from the plea agreement, which the defendant shouldn't breach, but we're also saying they were laid out in the PSR and, again, reading the PSR, where it refers to these amounts, these individual amounts from these financial institutions, which total more than a million, doesn't use the word approximately there. It uses it in other contexts, such as the total amount of all the loans, which included, for example, SBA-provided loans that don't come within this or also include, for intended loss purposes, loans that weren't even funded. But when we're talking about the loans from the financial institutions that exceed a million, the word approximately is not used in delineating those. Then it's simple math. You just add them up, and it's over a million. Any questions? Thank you very much for your argument. Let's go to the next one. Thank you, Your Honors. And briefly, we have different losses here. We have the 1.7 million intended loss, 1.3 million actual loss, and then we have, that's loss. We're talking receipts from the financial institutions, not including the SBA. That was not contemplated by the plea agreement, and that's where the probation officer had that independent obligation to investigate. The judge relied on the PSR number to verify that that amount just exceeded the 1 million, and the agreement is not to argue other factors such as downward departures or something like that. The plea agreement is not to contest the fact that the court didn't follow the pre-agreement and follow the probation officer to do something independently. It wasn't effective to force the probation officer versus to challenge the probation officer's finding here, and I spin on that. Thank you, Your Honors. Thank you very much, counsel, for your argument. The matter is submitted.
judges: TASHIMA, NGUYEN, Fitzwater